[No. 32113. Department Two. December 18, 1952.]

EDWARD H. AMICK *et al.*, *Appellants*, v. CHARLES FLASH *et al.*, *Respondents.*[1]

*Colvin & Williams*, for appellants.

*Morris H. Russell, Gordon H. Sweany, Edward R. Taylor,* for respondents.

PER CURIAM.—We are presented solely with an issue of fact as to the cause of a wash or slide that partially wrecked the plaintiffs' summer home in early March of 1950.

The house in question fronted on Puget Sound, the shore line at that point running in a northwesterly-southeasterly direction. Back of the house was a high bank which paralleled the shore line. The defendants had a home with rather extensive grounds extending eastward from the top of the bank, their property being above that of the plaintiffs, east and slightly to the north of it. The defendants' grounds were so developed that a portion of the natural drainage went into a catch basin and then through a drain pipe which projected through the face of the bank a short distance from the top thereof, and the water flowing through the pipe was discharged onto the face or slope of the bank. Within two feet of this pipe was another, through which ran the over-

[1]Reported in 251 P. (2d) 172.

flow from their septic tank. The discharge from the septic tank overflow pipe was relatively inconsequential.

It is the plaintiffs' theory that the surface waters thus accumulated and discharged onto the face of the bank, together with the much lesser overflow from the septic tank, caused mud and debris to be washed down upon their house, with the result that the house was pushed off its foundations, its walls caved in, and its interior supporting beams pulled apart, to the plaintiffs' damage in the amount of eight thousand dollars.

The defendants concede that a slide originated on or adjacent to their property late in January or early in February, and that it deposited mud and debris on the plaintiffs' property, but claim it resulted in no damage to the house. They contend that a second slide, which originated some thirty feet south of their property and on a bank directly back of the plaintiffs' summer home, caused the damage of which the plaintiffs complain, and that there was no causal connection between that slide and the water flowing from the pipes above referred to.

The trial court found that the evidence supported the defendants' position, and dismissed the action. The plaintiffs have appealed. There is, as we have indicated, no dispute as to the applicable principles of law; the issue is: Does the evidence sustain the findings on which the order of dismissal was based?

■ We are satisfied from an examination of the record that there is evidence which does sustain the findings of the trial court on the essential issues of whether the second slide was solely responsible for the damage to the appellants' house, and, if so, whether that slide originated south of the respondents' property and followed a course which established that the water from the respondents' pipe was not a contributing cause thereof. A recital of the conflicting evidence would, under such circumstances, serve no useful purpose. It is our policy, subject to occasional deviation, to dispose of cases involving only questions of fact in which

we find that the evidence supports the essential findings of the trial court, by *per curiam* opinions.

The assignment of error that the court gave too much weight to the testimony of an expert witness, which testimony appellants assert was purely speculative, hypothetical and contrary to that of eyewitnesses, is without merit. There were no eyewitnesses of the slide that actually damaged the appellants' house. The expert witness in question made his examination within two or three weeks of the occurrence of the slide that did the damage complained of, and while mud was still moving in the slide path. He implemented almost every phase of his testimony with illustrative photographs. The trial court found him convincing and, on the record before us, we conclude that the trial court was amply justified in determining that the slide which did the damage to the appellants' house originated some thirty feet south of the respondents' property and was not caused by the discharge of water through the pipes maintained by the respondents. The expert's testimony was clearly within the scope of reason and common sense. See *Prentice Packing & Storage Co. v. United Pac. Ins. Co.,* 5 Wn. (2d) 144, 106 P. (2d) 314 (1940).

It is urged that the trial court's oral decision indicates a misunderstanding of the evidence presented as to the quantity of water discharged through the drain pipe running from the catch basin on the respondents' property, and that this misunderstanding resulted in a finding that the flow of water through the pipes was of such inconsequential nature as would not have produced and caused damage to the appellants' property.

Even though it be conceded that the quantity of water discharged from the drain pipes was considerable and represented the drainage of surface water from nine thousand square feet (according to the appellants' expert) or twelve thousand square feet (according to the respondents' expert), the finding which necessarily defeats recovery for the damage complained of is that the slide which pushed the appellants' summer home off its foundation and resulted in

substantial damage to it did not originate in proximity to the pipes but, as previously indicated, some thirty feet south of the respondents' property, and had no causal connection with the water discharged from the pipes.

One assignment of error challenged the finding that the water main owned and operated by respondent water district No. 54 was broken as the result of the second slide. As we construe the evidence, it did support such a finding, although the finding was in conflict with an admission in the answer of the respondent water district to the effect that the main broke on or about February 3, 1950. The error, if any, was harmless, as the appellants concede elsewhere in their brief that the water discharged from the water district's broken main was negligible in amount. This assignment of error seems to be hypercritical, for if the trial court had found, as the appellants seem to urge that it should, that the water district's main broke on or about February 3, 1950, it would have been some four weeks before the appellants sustained the damage for which they seek to recover in this action.

Nor are we unmindful of the contention that the damage could have been the result of a combination of the two slides, one of which was occasioned by the discharge of water from the respondents' pipes. If it be conceded that the first slide was so caused, there is convincing evidence that the slides were separate and distinct and that the second slide, in and of itself and entirely apart from the first slide, did the damage to the appellants' house. It, of course, could be argued that the first slide damaged the appellants by depositing mud and debris on their property, but there is no evidence as to the amount of the damage resulting therefrom; the evidence of damage is confined to the decrease in value in consequence of both slides.

The judgment of dismissal is affirmed.

---

February 6, 1953. Petition for rehearing denied.